**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

AETNA LIFE INSURANCE CO., *et al.*, *

Plaintiffs, *

v. * Civil Action No. DLB-23-1484

TIERO, LLC, *et al.*, *

Defendants. *

* * * * * * * * *

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

/s/
Andrew D. Freeman (Fed. Bar No. 03867)
Kevin D. Docherty (Fed. Bar No. 18596)
Neel K. Lalchandani (Fed. Bar. No. 20291)
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 2500
Baltimore, MD 21202
T: (410) 962-1030
F: (410) 385-0869
adf@browngold.com
kdocherty@browngold.com
nkl@browngold.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

Introduction ..... 1

Background ..... 2

Legal Standard ..... 5

Argument ..... 6

I. Aetna fails to state a claim under ERISA. ..... 6

A. Aetna is not a fiduciary for purposes of its § 502(a)(3) claims. ..... 7

B. Aetna has not alleged an underlying ERISA violation. ..... 10

C. Aetna's claim for estoppel does not allege a misrepresentation regarding ambiguous plan language or "extraordinary circumstances," and the relief it seeks is not available. ..... 11

D. Aetna's restitution claim is prohibited because it seeks legal, not equitable, relief. ..... 13

E. Aetna's ERISA claims for declaratory and injunctive relief are duplicative, unripe, and improperly pleaded. ..... 16

II. Aetna cannot invoke the Declaratory Judgment Act to circumvent ERISA's limitations. ..... 18

III. Aetna's state-law claims fail. ..... 19

A. Aetna has not alleged fraud with particularity as required by Rule 9(b). ..... 19

B. Aetna has not adequately pleaded a duty of care or justifiable reliance to support its claim of negligent misrepresentation. ..... 24

C. Aetna improperly alleges claims under Pennsylvania and Connecticut law. ..... 25

D. Aetna's remaining state law claims are not properly alleged. ..... 27

1. Aetna has not properly stated a claim for aiding and abetting fraud. ..... 27

2. Because Aetna does not plausibly plead an underlying tort or an agreement to defraud, the civil conspiracy claim must be dismissed. ..... 29

3. Aetna's claims for unjust enrichment and money had and received are duplicative of other flawed claims and of each other. ..... 30

Conclusion ........................................................................................................................ 30

# TABLE OF AUTHORITIES

## Cases

*Abel v. Plan. & Zoning Com'n of Town of New Canaan*,
297 Conn. 414 (2010) ........ 26

*ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*,
917 F.3d 206 (4th Cir. 2019) ........ 6

*Acqua Assistance, LLC v. Pelican Group Consulting*,
Case No. 1:20-cv-02802-JRR, 2022 WL 2275465 (D. Md. June 23, 2022) ........ 27, 28

*Alexander & Alexander, Inc. v. B. Dixon Evander & Assoc.*,
336 Md. 635 (1994) ........ 29

*Alleco, Inc. v. Harry & Jeanette Weinberg Found.*,
340 Md. 176 (1995) ........ 27, 28

*Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*,
Civil Action No. 13-cv-3422-WJM-CBS, 2015 WL 1041515 (D. Colo. Mar. 6, 2015) ........ 16

*Arrington v. Sun Life Assurance Co. of Can.*,
Civil Action No. TDC-18-0563, 2019 WL 2571160 (D. Md. June 21, 2019) ........ 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5

*Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*,
888 F.3d 696 (4th Cir. 2018) ........ 21

*Baxter v. C.A. Muer Corp.*,
941 F.2d 451 (6th Cir. 1991) ........ 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5, 25

*Boyds Civic Ass'n v. Montgomery Cnty. Council*,
309 Md. 683 (1987) ........ 17

*Brewster v. Brennan*,
567 F. Supp. 2d 791 (D. Md. 2008) ........ 17

*Briglia v. Horizon Healthcare Servs., Inc.*,
No. Civ. A. 03-6033 FLW, 2005 WL 1140687 (D.N.J. May 13, 2005) ........ 8

*Burley v. Balt. Police Dep't*,
422 F. Supp. 3d 986 (D. Md. 2019) .......... 30

*Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*,
631 F. Supp. 3d 125 (S.D.N.Y. 2022) .......... 12

*Carroll v. Walden Univ., LLC*,
Civil No.: 1:22-cv-00051-JRR, 2022 WL 17252556 (D. Md. Nov. 28, 2022) .......... 26

*Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*,
756 F.3d 356 (5th Cir. 2014) .......... 16

*Cent. States, Se. & Sw. Areas Health & Welfare v. First Agency, Inc.*,
756 F.3d 954 (6th Cir. 2014) .......... 15

*Chubb & Son v. C&C Complete Servs., LLC*,
919 F. Supp. 2d 666 (D. Md. 2013) .......... 24, 25

*Cigna Healthcare of Texas, Inc. v. VCare Health Servs., PLLC*,
Civil Action No. 3:20-CV-0077-D, 2020 WL 3545160 (N.D. Tex. June 29, 2020) .......... 15

*Coleman v. Nationwide Life Ins. Co.*,
969 F.2d 54 (4th Cir. 1992) .......... 7

*Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*,
Civil Action No. DKC 14-2376, 2015 WL 4394408 (D. Md. July 15, 2015) .......... 13, 14, 15, 16

*Cont'l Cas. Co. v. Fuscardo*,
35 F.3d 963 (4th Cir. 1994) .......... 19

*Custer v. Sweeney*,
89 F.3d 1156 (4th Cir. 1996) .......... 8

*Depot, Inc. v. Caring for Montanans, Inc.*
915 F.3d 643 (9th Cir. 2019) .......... 14, 15

*Dorsey v. Aetna Life Ins. Co.*,
Civil No. 2:12cv90, 2013 WL 1288165 (E.D. Va. Mar. 26, 2013) .......... 11–12

*Gallman v. Sovereign Equity Grp., Inc.*,
Civil Action No. AW-11-2750, 2012 WL 1820556 (D. Md. May 15, 2012) .......... 29

*Geist v. Hisp. & Telecomms. Network, Inc.*,
Civil Action No. PX-16-3630, 2018 WL 1169084 (D. Md. Mar. 6, 2018) .......... 17

*Great-West Life & Annuity Insurance Co. v. Knudson*,
534 U.S. 204 (2002) .......... 13, 14

*Guerra-Delgado v. Popular, Inc.*,
774 F.3d 776 (1st Cir. 2014) ........ 11

*Gulf Life Ins. v. Arnold*,
809 F.2d 1520 (11th Cir. 1987) ........ 18

*Harman v. Unisys Corp.*,
356 F. App'x 638 (4th Cir. 2009) ........ 22

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) ........ 19–20

*Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*,
623 F. Supp. 2d 568 (D.N.J. 2009) ........ 11

*Hughes Network Sys., Inc. v. InterDigital Communications Corporation*,
17 F.3d 691 (4th Cir. 1994) ........ 18

*In re DDAVP Direct Purchase Antitrust Litig.*,
585 F.3d 677 (2d. Cir. 2009) ........ 22

*Int'l Painters and Allied Trades Industry Pension Fund v. Florida Glass of Tampa Bay, Inc.*,
Civil No. SAG-23-00045, 2023 WL 3304891 (D. Md. May 8, 2023) ........ 19

*Jacques v. First Nat. Bank of Md.*,
307 Md. 527 (1986) ........ 24

*Jarosz v. Am. Axle & Mfg., Inc.*,
372 F. Supp. 3d 163 (W.D.N.Y. 2019) ........ 12

*Jennings v. Rapid Response Delivery, Inc.*,
Civil No. WDQ-11-0092, 2011 WL 2470483 (D. Md. June 16, 2011) ........ 30

*Juric v. USALCO, LLC*,
--- F. Supp. 3d ---, Civil Action No. JKB-22-0179, 2023 WL 2332352 (D. Md. Mar. 2, 2023) ........ 10

*Kashdan v. George Mason Univ.*,
70 F.3d 694 (4th Cir. 2023) ........ 22

*Kennerson v. Thames Towboard Co.*,
89 Conn. 367 (1915) ........ 26

*Kyle Rys., Inc. v. Pac. Admin. Servs. Inc.*,
990 F.2d 513 (9th Cir. 1993) ........ 8

*Learning Works, Inc. v. The Learning Annex, Inc.*,
830 F.2d 541 (4th Cir. 1987) ........ 23

*Martens Chevrolet, Inc., v. Seney*,
439 A.2d 534 (Md. 1982) .......... 24

*Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*,
991 F.2d 94 (4th Cir. 1992) .......... 24

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) .......... 9

*Mazariegos v. Pan 4 Am., LLC*,
No. DLB-20-2275, 2021 WL 4339434 (D. Md. Sept. 23, 2021) .......... 6

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) .......... 10, 13

*Mizell v. Sara Lee Corp.*,
Civil Action No. 2:05CV129, 2005 WL 1668056 (E.D. Va. June 2005) .......... 23

*Moon v. BWX Techs., Inc.*,
577 F. App'x 224 (4th Cir. 2014) .......... 8, 10

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995) .......... 6

*Nails v. S&R, Inc.*,
334 Md. 398 (1994) .......... 19

*OceanFirst Bank N.A. v. Brink's, Inc.*,
Civ. No. DLB-21-3275, 2022 WL 4465897 (D. Md. Sept. 26, 2022) .......... 24, 25

*Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*,
136 F.3d 273 (2d Cir. 1998) .......... 12

*Oxford Health Ins., Inc. v. Motherly Love Home Care Servs., Inc.*,
237 F. Supp. 3d 25 (E.D.N.Y. 2017) .......... 18

*Plotnick v. Comput. Scis. Co. Deferred Comp. Plan for Key Execs.*,
182 F. Supp. 3d 573 (E.D. Va. 2016) .......... 11, 12

*Sereboff v. Mid Atlantic Medical Services*,
547 U.S. 356 (2006) .......... 13

*Shaw v. Delta Air Lines*,
463 U.S. 85 (1983) .......... 6

*Sheppard v. Visitors of Va. State Univ.*,
993 F.3d 230 (4th Cir. 2021) .......... 6

*State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*,
Civil Action No. 18-cv-1279, 2018 WL 6514797 (D. Md. Dec. 11, 2018) ....................... 17, 27

*Sullivan v. Monsanto Co.*,
615 F. Supp. 2d 469 (E.D. La. 2009)........................................................................... 12

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ........................................................................................ 21

*U.S. Airways v. McCutchen*,
569 U.S. 88 (2013).......................................................................................................... 10

*U.S. ex rel. Ahumada v. NISH*,
756 F.3d 268 (4th Cir. 2014) ........................................................................................ 20

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
525 F.3d 370 (4th Cir. 2008) ........................................................................................ 22

*United States ex rel. Kelly-Creekbaum v. L'Academie De Cuisine*,
Civil Action No. DKC-17-3525, 2019 WL 3817264 (D. Md. Aug. 2019) ............................. 20

*United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*,
707 F.3d 451 (4th Cir. 2013) .......................................................................................... 6

*United States ex rel. Taylor v. Boyko*,
39 F.4th 177 (4th Cir. 2022) ........................................................................................... 6

*White v. United States*,
791 F. Supp. 2d 156 (D.D.C. 2011)................................................................................ 30

*Williams v. Kincaid*,
45 F.4th 759 (4th Cir. 2022) ........................................................................................... 6

**Statutes**

18 Pa. C.S.A. § 4117.......................................................................................................... 25

28 U.S.C. § 2201 ................................................................................................................. 18

29 U.S.C. § 1002(21)(A)........................................................................................................ 7

29 U.S.C. § 1104(a)(1)............................................................................................................ 9

29 U.S.C. § 1132(a)(3) ("§ 502(a)(3)") ............................................................................*passim*

C.G.S.A. § 53-442–44........................................................................................................... 25

**Rules**

Fed. R. Civ. P. 8 .......... 5, 8, 10, 25

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... 5

**Other Authorities**

1 Dobbs, Law of Remedies § 4.2(1) .......... 14

## Introduction

In January 2022, as the world was experiencing the most rapid rise in cases of the entire COVID-19 pandemic,[1] the federal government mandated that private health insurers cover the cost of up to eight at-home COVID-19 tests for their members each month. That policy, at times referred to as the "Biden Mandate," was based on well-documented research showing that frequent testing is an effective means of reducing the spread of the COVID-19 virus and, in turn, saving lives.[2] Now, after the public health emergency has ended, Plaintiffs Aetna Life Insurance Co. and Aetna Health, Inc. (collectively, "Aetna") are attempting to claw back the money it paid to one supplier of these tests, Defendant Tiero LLC, on the ground that Tiero used the wrong billing codes to submit its requests for payment.

This is Aetna's second attempt at pleading a valid cause of action and notwithstanding the amendments to its Complaint, Aetna's allegations are riddled with fundamental flaws that preclude recovery. Aetna invokes the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3). But its claims do not survive the most basic threshold inquiries under the statute, because (a) Aetna is acting to protect its own business interests—not as a fiduciary on behalf of its members—and (b) it has failed to allege an underlying ERISA

---

[1] *See* CNN, *Omicron surge is 'unlike anything we've ever seen,' expert says*, available at https://www.cnn.com/2021/12/30/health/us-coronavirus-thursday/index.html; CNBC, *U.S. Covid cases rise to pandemic high as delta and omicron circulate at same time*, https://www.cnbc.com/2021/12/29/us-covid-cases-rise-to-pandemic-high-as-delta-and-omicron-circulate.html.

[2] U.S. Department of Health and Human Services, *Coronavirus (COVID-19) Testing*, https://www.hhs.gov/coronavirus/testing/index.html ("Testing helps prevent and contain the spread of COVID-19"); The White House, *Fact Sheet: The Biden Administration to Begin Distributing At-Home, Rapid COVID-19 Tests to Americans for Free*, https://www.whitehouse.gov/briefing-room/statements-releases/2022/01/14/fact-sheet-the-biden-administration-to-begin-distributing-at-home-rapid-covid-19-tests-to-americans-for-free/ ("Testing is an important tool to help mitigate the spread of COVID-19").

violation. Moreover, Aetna's requests for restitution, estoppel, and declaratory and injunctive relief fail because what Aetna seeks is legal relief, not equitable relief, which is all that the pertinent provisions of ERISA allow.

Aetna's state-law claims are no better. Its fraud count does not allege the "who, what, when, where, and how of the alleged fraud," with the specificity required by Rule, and its duplicative aiding and abetting, civil conspiracy, unjust enrichment, and money had and received—all grounded in the alleged fraud—suffer from the same infirmity. For its negligent misrepresentation claim, Aetna has not adequately pleaded a duty of care or that it reasonably relied on any representations. And finally, Aetna attempts to apply both Pennsylvania and Connecticut law to this matter, without any support for the notion that Defendants are subject to the law of those jurisdictions.

## **Background**

To help "reduce the spread of COVID-19 and more quickly diagnose the disease during the COVID-19 pandemic, the federal government [] required private health insurance companies and group health plans," such as Aetna, to "cover the cost of FDA-approved OTC [over-the-counter] at-home COVID-19 tests." ECF No. 26, Am. Compl. (hereinafter "Compl.") ¶¶ 33, 34. This policy required insurance companies to cover up to eight tests per individual each month "without any cost-sharing requirements from the individual." *Id.* ¶ 34.

Tiero LLC, founded in August 2020, is a healthcare platform "that build[s] a modern infrastructure linking providers and payers . . . to simplify healthcare management." *Id.* ¶ 44. During the heart of the pandemic, Tiero operated a website that allowed individuals to "order tests on a subscription basis, to be shipped to the person's home every month." *Id.* ¶ 46. Certify Global Inc., founded in 2012, is a healthcare technology company. *Id.* ¶ 53. Aetna alleges on

"information and belief" that Certify and Tiero share the same or substantially the same ownership, leadership, and office space. *Id.* ¶ 60. Sajad Zalzala is a "physician located in Dearborn, Michigan." *Id.* ¶ 70.

The gravamen of Aetna's Amended Complaint is that Tiero, Certify, and Dr. Zalzala ("Defendants") "engaged in a fraudulent scheme designed to extract inflated and improper reimbursement from Aetna and its plan sponsors" for COVID tests. *Id.* ¶ 1. Aetna alleges that Defendants used the wrong billing codes—CPT code 87426 and Place of Service Code 11—when they should have used HCPCS code K1034, which the Centers for Medicare and Medicaid Services issued in April 2022 (months after Tiero began billing Aetna).[3] *Id.* ¶¶ 2, 82–83, 89. According to Aetna, Dr. Zalzala improperly provided his name and National Provider Identifier ("NPI") to Tiero, and the submitted claims "typically" listed Dr. Zalzala as the referring and rendering provider when in fact patients were identified through direct advertising. *See id.* ¶¶ 71–73, 95. Aetna also generally alleges that Tiero engaged in fraud by "billing for services or supplies not yet rendered," *id.* ¶ 81; *see also id.* ¶ 105–108, and by sending tests to individuals when tests were "not ordered by patients," *id.* ¶ 121e. Aetna claims that because of Defendants' alleged fraud, it overpaid "Tiero, in violation of the terms of the ERISA plans." Compl. ¶ 200.[4]

---

[3] Aetna neglects to mention, however, that providers were operating in a period of uncertainty before the new billing code was rolled out. For example, the Pennsylvania Department of Human Services issued a Medical Assistance Bulletin on November 10, 2022, stating that it would not begin accepting the K1034 billing code from pharmacies until December 5, 2022—nearly a year after the Biden Mandate took effect. *See* Pennsylvania Department of Human Services, Medical Assistance Bulletin (Dec. 5, 2022), *available at*: https://shorturl.at/nrHK9.

[4] The numbering in Aetna's Amended Complaint is off, as it goes from Paragraph 225 back down to 187. *See* Am. Compl. p. 34. As a result, the Amended Complaint contains two of every Paragraph between 187 and 212. *Compare, e.g.*, Am. Compl. p. 28 (containing paragraph 187) *with id.* p. 34 (containing different paragraph 187).

Given its fraud-based theory, which must be pleaded with particularity, Aetna's Complaint is most notable for what it does not say. The list is long and includes the following essential facts:

- The precise number of claims at issue (the Amended Complaint alleges that Defendants submitted "tens of thousands of claims" to Aetna, *id.* ¶ 119, but does not allege how many allegedly included any misrepresentations, let alone tie particular alleged misrepresentations to particular insurance claims, *id.* ¶ 121); see also *id.* ¶¶ 152c, 158 ("thousands of claims");[5]
- The insurance claims for which Tiero allegedly did not send COVID-19 tests to Aetna members;
- The insurance claims for which Tiero allegedly sent tests to people who did not order them;
- The details of how Aetna processed the claims, who at Aetna processed them, or where they were processed, *id.* ¶ 26 (alleging only that "the process by which Aetna adjudicates claims is largely automated");
- How many of the claims it reimbursed, at what rates, and whether those amounts varied, and if so, on what basis;
- How many insurance claims submitted by Tiero it denied;
- How much did Aetna reimbursed Tiero for the claims, or the amount it now contends should have been reimbursed for the allegedly fraudulent claims.

The Complaint also does not identify the relevant healthcare plans at issue, nor does it include the pertinent language from those plans. Instead, Aetna acknowledges that the "specific terms of the impacted ERISA Plans vary," and it provides "examples" of what it calls "reasonably representative" provisions in the plans at issue. *Id.* ¶ 193. In one portion of its Amended Complaint, Aetna alleges that its "ERISA Plans contain provisions authorizing Aetna to recover overpayments made on behalf of the ERISA plans." *Id.* ¶ 213. However, Aetna does not provide the relevant plans, saying only that "*some plans* include language stating that, '[i]f a

---

[5] By Aetna's own admission, the data set that it has now provided to undersigned counsel is incomplete. *See* Compl. ¶ 116 ("Upon entry of a HIPAA Qualified Protective Order, Aetna will provide complete claims data to Defendants.").

benefit payment is made by Aetna, to or on your behalf, which exceeds the benefit amount that you are entitled to receive, Aetna has the right: * [t]o require the return of the overpayment; or * [t]o reduce the amount of the overpayment, any future benefit payment made to or on behalf of that person or another person in his or her family.'" *Id.* at 5 n.1.

The Amended Complaint states that Tiero submitted claims "[b]etween January 2022 and the present." Compl. ¶ 119. On May 11, 2023, the Biden Mandate ended.[6]

**Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that requirement, a plaintiff must make more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In addition, because Aetna has alleged fraud, it must comply with Federal Rule of Civil Procedure 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud."

A motion to dismiss for failure to state a claim under Rule 12(b)(6) "tests the legal sufficiency of a complaint" and "should be granted unless the complaint 'states a plausible claim

[6] *See* U.S. Dep't of Health and Human Services, Fact Sheet: End of the COVID-19 Public Health Emergency (May 9, 2023), *available at*: https://www.hhs.gov/about/news/2023/05/09/fact-sheet-end-of-the-covid-19-public-health-emergency.html ("The requirement for private insurance companies to cover COVID-19 tests without cost sharing, both for OTC and laboratory tests, will end at the expiration of the PHE [public health emergency].").

for relief.'" *Mazariegos v. Pan 4 Am., LLC*, No. DLB-20-2275, 2021 WL 4339434, at *2 (D. Md. Sept. 23, 2021) (citations omitted). When considering such a motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court need not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quotation omitted). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quotation omitted).

## Argument

### I. Aetna fails to state a claim under ERISA.

Aetna brings three claims under ERISA, a "[federal] statute designed to promote the interests of employees and their beneficiaries in employee benefit plans," *Shaw v. Delta Air Lines*, 463 U.S. 85, 90 (1983) (citations omitted), by controlling how those plans are administered, *see N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 651 (1995). ERISA permits "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3) ("§ 502(a)(3)").

Aetna's claims for what it calls "equitable relief" in Count VII (estoppel), Count VIII (restitution), and Count IX (declaratory and injunctive relief), share two fatal flaws. First, Aetna does not have authority to sue under that section of the statute because it is not a "fiduciary" on behalf of plan participants (*i.e.*, Aetna's members/Tiero's customers). Second, Aetna does not

allege any underlying ERISA violation, which is a prerequisite to obtaining the equitable relief it seeks.

Beyond these global flaws, Aetna's ERISA claims fail for additional reasons:

- Aetna's claim for equitable estoppel does not allege that Defendants misrepresented the meaning of ambiguous plan language or that other "extraordinary circumstances" exist.
- Aetna's claim for restitution is barred because it seeks legal relief (*i.e.*, monetary damages), not equitable relief.
- Aetna's requests for declaratory and injunctive relief are duplicative of other claims, are hypothetical, and are improper because the alleged harm of overpayments is not irreparable given the availability of monetary damages.

Each of these requires dismissal of Aetna's ERISA claims.

### A. Aetna is not a fiduciary for purposes of its § 502(a)(3) claims.

A person is a "fiduciary" under ERISA

> *[t]o the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis added). The phrase "to the extent" is limiting; fiduciary status under ERISA is not an "all-or-nothing concept," and a "court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992).

Aetna alleges that it is pursuing this action as both (1) a provider of fully insured health plans and (2) a claims administrator for self-funded, employer-established health plans. *See* Compl. ¶¶ 17–18. Regarding the former category, fully insured plans, Aetna concedes that it is bringing its "claims *on its own behalf*." *Id.* ¶ 17 (emphasis added); *see also id.* ("Aetna was

induced to pay *its own funds*") (emphasis added). Thus, Aetna is not a fiduciary, and the Court should dismiss the ERISA claims with respect to any fully insured plans.

In addition, Aetna has not pleaded its fiduciary status in a manner that satisfies Rule 8(a). Aetna alleges that the plans at issue "delegate to Aetna discretionary authority to interpret plan documents and administer claims for benefits (*e.g.*, determining whether claims are payable)" Compl. ¶ 21, but does not identify the specific plans or the language in them that supposedly gives it "discretionary authority." Such general allegations of "discretionary authority, control, and responsibility" are insufficient at the motion-to-dismiss stage. *See Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996); *see also id.* (noting that "court need not accept plaintiff's unwarranted deductions, footless conclusions of law, or sweeping legal conclusions cast in the form of factual allegations" (internal quotation marks and citations omitted)); *Moon v. BWX Techs., Inc.*, 577 F. App'x 224, 230 (4th Cir. 2014) (rejecting "conclusory allegation" that defendants had "discretionary authority under ERISA to create and manage the benefit plan" and were "therefore ERISA fiduciaries" as to the plan) (internal citation omitted).

Moreover, courts have long found that third-party administrators for self-funded plans are *not* fiduciaries for purposes of ERISA claims, *even where* they process claims. *See, e.g.*, *Kyle Rys., Inc. v. Pac. Admin. Servs. Inc.*, 990 F.2d 513, 516 (9th Cir. 1993); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir. 1991). In so doing, courts have analyzed the specific language of plans to determine fiduciary status, but again, here, Aetna has not identified any language that describes the relationship between Aetna and the employers that fund their own insurance coverage. *See, e.g.*, *Briglia v. Horizon Healthcare Servs., Inc.*, No. Civ. A. 03-6033 FLW, 2005 WL 1140687, at *8 (D.N.J. May 13, 2005) (analyzing terms of agreements between third-party administrator and self-insured plans, and concluding that plaintiff has "alleged no more than that

[administrator] made initial claims decisions which the plans then reviewed and acted upon" and there is "no explication of [insurer] exercising any discretion, authority or control associated with its administration of any of the plans").

It is apparent that Aetna is not a fiduciary for its members for another reason: it is actively working *against* their interests. ERISA imposes explicit duties on fiduciaries of covered insurance plans, including that they act "with respect to the plan *solely in the interest of the participants and beneficiaries*" and "for the *exclusive purpose* of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1) (emphasis added). The breadth of this "duty of loyalty" to plan participants and beneficiaries is "strict" and "unyielding." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 152–53 (1985) (Brennan, J., concurring). Aetna violates that duty here by seeking to retroactively deny coverage (for claims it has already paid) or by refusing to pay claims without cause.

Even if the Court finds that Aetna is a fiduciary under § 502(a)(3), it is not apparent that Plaintiffs have standing for *all* of the "tens of thousands of [insurance] claims" that may be at issue. Compl. ¶ 119. The Plaintiffs are Aetna Life Insurance Company, a Connecticut company, and Aetna Health, Inc., a Pennsylvania company. Plaintiffs' Local Rule 103.3 Disclosure Statement reveals a complex corporate structure. *See* ECF No. 11-1, at 1 (reflecting that Aetna Health, Inc. (Pennsylvania), along with several other Aetna entities, is nestled within Aetna Holdings, LLC (Delaware), which in turn is nestled under Aetna Inc. (Pennsylvania)). Given the several entities in that corporate family, it is impossible to tell from Plaintiffs' vague allegations whether Plaintiffs—the actual parties before this Court—have a connection to each of the insurance claims at issue, or only an undifferentiated subset of those claims.

### B. Aetna has not alleged an underlying ERISA violation.

ERISA does not authorize equitable relief writ large. Rather, 29 U.S.C. § 1132(a)(3) "authorizes appropriate equitable relief *only to redress violations of ERISA or an ERISA plan*[.]" *Moon*, 577 F. App'x at 232 (emphasis added) (citing *U.S. Airways v. McCutchen*, 569 U.S. 88, 100 (2013)); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253 (1993). Aetna's ERISA claims should be dismissed because it has not adequately alleged a violation of ERISA or a violation of an ERISA plan.

Aetna does not appear to claim that Defendants violated ERISA itself in any way. Thus, the Court should dismiss its claims for equitable relief to the extent they are premised on violation of the statute as opposed to a violation of ERISA plans. *See Juric v. USALCO, LLC*, --- F. Supp. 3d ---, Civil Action No. JKB-22-0179, 2023 WL 2332352, at *7 (D. Md. Mar. 2, 2023); *Moon*, 577 F. App'x at 228–29.

The Court should also dismiss Aetna's ERISA claims to the extent they are premised on a violation of an ERISA plan. While Aetna admits that "the specific terms of the impacted ERISA plans vary," Compl. ¶ 193, it fails to identify the relevant plan language in its Complaint or provide the plan documents. Aetna only cites to an amalgamation of what it calls "reasonably representative" language of the plans at issue.[7] *Id.* Because the plan language is essential to establishing Aetna's right to relief under 29 U.S.C. § 1132(a)(3), Aetna's failure to include the plan language in its Complaint is fatal to its claims.

[7] Aetna's failure to provide essential factual details—such as the specific plan language or of the supposed agreement among the Defendants—is the common thread of its Amended Complaint. This failure is incompatible with Aetna's obligation to meet the Rule 8 standard, let alone the heightened 9(b) standard that governs its fraud-based claims.

Beyond Aetna's failure to include the plan language, Aetna has not alleged *how* Defendants violated the terms of any ERISA plans. Establishing such a violation would be a difficult proposition here because, while a plan might cover only services that are "medically necessary," the Biden Mandate *required* insurers like Aetna to cover COVID-19 tests to help stem the tide of the pandemic. In truth, Aetna's allegations do not implicate ERISA, but Aetna's general frustration with the Biden Mandate itself. Just because "a substantial number of the plans at issue are governed by ERISA" does not mean that its claims concern "the particular rights and obligations established by those benefit plans." *Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*, 623 F. Supp. 2d 568, 578 (D.N.J. 2009). Because Aetna has not adequately alleged an underlying ERISA violation, its ERISA-based claims should be dismissed.

### C. Aetna's claim for estoppel does not allege a misrepresentation regarding ambiguous plan language or "extraordinary circumstances," and the relief it seeks is not available.

Count VII of Aetna's Complaint is captioned as one for estoppel, Compl. ¶¶ 189–201, but it is difficult to tell what Aetna is requesting. Under ERISA, "estoppel claims are limited to statements that interpret ambiguous plan language." *Plotnick v. Comput. Scis. Co. Deferred Comp. Plan for Key Execs.*, 182 F. Supp. 3d 573, 583 n.10 (E.D. Va. 2016) (citing *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 782 (1st Cir. 2014)). A claim is "viable only if [plaintiffs] can show" that defendants "misrepresented the meaning of ambiguous Plan language." *Id.* at 583. Aetna has not made any such allegation here; while it cites to "representative" plan language, it has not alleged that Defendants made a "*specific* misrepresentation" of ambiguous language. *Id.* Rather, Aetna's claims center on the same supposed fraud that runs throughout its other claims. *See, e.g.*, Compl. ¶¶ 195-201.

A claim for equitable estoppel under ERISA also requires a showing of "extraordinary circumstances." *Dorsey v. Aetna Life Ins. Co.*, Civil No. 2:12cv90, 2013 WL 1288165, at *24

(E.D. Va. Mar. 26, 2013) (citation omitted). "Extraordinary circumstances must involve intentional inducement or deception that inures to the defendant's benefit[.]" *Jarosz v. Am. Axle & Mfg., Inc.*, 372 F. Supp. 3d 163, 183 (W.D.N.Y. 2019). Some courts have equated this requirement with a showing of fraud. *See id.* at 185. To the extent Aetna bases its estoppel claim on fraud, it has failed to properly plead intentional fraudulent conduct with the required specificity. *See* Argument III.A; *see also Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*, 136 F.3d 273, 275 (2d Cir. 1998) (applying 9(b) standard to ERISA claim based on fraud). Aetna's failure to plead "extraordinary circumstances" is thus another reason that its estoppel claim must be dismissed. *See id.*; *see also Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*, 631 F. Supp. 3d 125, 139–40 (S.D.N.Y. 2022) (recognizing that estoppel is a "drastic remedy" and finding that "Plaintiffs have pleaded no extraordinary circumstances"); *see also Sullivan v. Monsanto Co.*, 615 F. Supp. 2d 469, 473 (E.D. La. 2009).

While Aetna generically asserts that it "seeks the equitable remedy of estoppel," Compl. ¶ 201, it does not specify what it is asking the Court to estop. In fact, it does not appear that Aetna actually seeks estoppel. Rather, Aetna seeks something akin to declaratory relief, *i.e.*, a broad declaration that its interpretation of its "representative" plan language," is correct. Aetna's attempt to bring across-the-board claims based on what purports to be "representative" plan language highlights one of the central flaws with its Amended Complaint. As best as Defendants can tell, Aetna appears to ask the Court to preclude Defendants from claiming there were not overpayments—that is, defending against "precisely what is at issue" in this litigation and thus "effectively put[ting] the cart before the horse." *Carfora*, 631 F. Supp. 3d at 140; *see also Plotnick*, 182 F. Supp. 3d at 584 ("[T]o the extent plaintiffs argue that their understanding of the

Plan as a whole constitutes an equitably enforceable promise, Count III as alleged simply fails to state a claim.").

**D. Aetna's restitution claim is prohibited because it seeks legal, not equitable, relief.**

In Count VIII, Aetna seeks restitution. Aetna's claim is not permitted by ERISA because it seeks money damages, which is a legal remedy, rather than equitable relief. As used in § 502(a)(3), "equitable relief," means only "those categories of relief that were typically available in equity . . . ." *Mertens*, 508 U.S. at 256, 258–59 n.8 ("'Equitable' relief must mean *something* less than *all* relief," otherwise the term equitable would be rendered "meaningless." (emphasis in original)). To seek restitution *in equity*, a plaintiff is limited to either (1) the "tracing method" described by the Supreme Court in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), or (2) the equitable lien or constructive trust method set forth in *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356 (2006). *See Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, Civil Action No. DKC 14-2376, 2015 WL 4394408, at *5–10 (D. Md. July 15, 2015) (dismissing insurer's claim for overpayments as seeking legal, not equitable, relief). ERISA's limited, equitable remedies do not allow insurers to seek reimbursement of funds when the defendant does not separately hold those funds. *Knudson*, 534 U.S. at 213–14.

Aetna's stratagem to avoid this express limitation by characterizing its claim as one for "reimbursement" (Compl. ¶ 207) rather than damages is inadequate. In *Knudson*, the Court noted that "a plaintiff could seek restitution in *equity*" only where money belonging to the plaintiff "could clearly be traced to particular funds or property in the defendant's possession." 534 U.S. at 213 (emphasis in original). In contrast, where "the plaintiff '*could not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just

grounds for recovering money to pay some benefit the defendant had received from him,' the plaintiff had a right to *restitution at law* through an action derived from the common-law writ of assumpsit." *Id.* at 213 (quoting 1 Dobbs, Law of Remedies § 4.2(1), p. 571 (2d ed. 1993)) (emphasis in *Knudson*). In *Knudson*, the plan's sponsor and its administering insurance company sought restitution pursuant to a policy provision allowing recovery of benefits paid by the plan when the beneficiary also recovered damages from a third party. The Supreme Court noted that the plaintiffs did not seek "particular funds" that belonged to the insurance plan but, rather, contended that they were "contractually entitled to *some* funds for benefits they conferred." *Id.* at 214 (emphasis in original). Therefore, the restitution sought by the *Knudson* plaintiffs was legal, not equitable, and was unavailable under ERISA. *Id.*

The same is true here. Aetna has failed to *specifically* identify *particular* funds that it seeks to recover. While Aetna made payments to Tiero, Aetna has not delineated the subset of funds to which it claims entitlement: the alleged overpayments. In other words, Aetna's claim elides the key distinction between the total funds that Aetna paid to Tiero and the lesser amount of the alleged overpayments (*i.e.*, the difference between what Aetna paid and what Aetna claims should have been paid on the claims). Moreover, Aetna does not allege that the funds it is seeking are "in separate accounts or otherwise how they are separate and distinct from [Defendants'] general assets." *Advanced Surgery Ctr.*, 2015 WL 4394408, at *8. Thus, Aetna is simply seeking "compensatory damages" rather "than the equitable return of specific funds belonging to the fund that were within the beneficiary's possession." *Id.* at *6.

The Ninth Circuit recently encountered this issue in *Depot, Inc. v. Caring for Montanans, Inc.* 915 F.3d 643 (9th Cir. 2019). There, the employer-plaintiffs sought to recover a portion of the premium payments charged by the defendant-insurers via a restitution count. But the court

confirmed that restitution was inappropriate given that plaintiffs sought "to recover not a specific thing but *some unidentified portion of the many premium payments*." *Id.* at 662 (emphasis added). The "premium surcharges plaintiffs seek to recover never existed as a distinct object or fund; rather, they reflect a specific amount of money encompassed *within* a particular fund"—the total premiums paid to defendants." *Id.* (internal quotation marks and citation omitted) (emphasis in original); *see also Arrington v. Sun Life Assurance Co. of Can.*, Civil Action No. TDC-18-0563, 2019 WL 2571160, at *14 (D. Md. June 21, 2019) (citing *Depot* and stating that "[t]he court further clarified that for the funds to be identifiable, the party seeking relief must designate a specific amount of money due"). Even if Aetna had identified the specific amount of overpayment, "[i]t is the *fund*, not its *size*, that must be identifiable." *Depot*, 915 F.3d at 662 (quoting *Cent. States, Se. & Sw. Areas Health & Welfare v. First Agency, Inc.*, 756 F.3d 954, 960 (6th Cir. 2014)). Absent such identification, a judgment for overpayment "is restitution at law, not equity." *Id.*; *see also Advanced Surgery Ctr.*, 2015 WL 4394408, at *8.

The second pathway—the equitable lien or constructive trust method—is likewise unavailable. Aetna merely alleges that "[the] ERISA Plans contain provisions authorizing Aetna to recover overpayments made on behalf of the ERISA plans. Pursuant to these terms, ERISA Plan members and the providers to whom members assign their benefits are on notice that any overpayments are subject to an equitable lien by agreement and rightfully belong to the ERISA Plans" Compl. ¶ 213. Because Aetna does not include all the relevant plan language, Aetna's allegation is insufficient to state a plausible claim for equitable restitution. *See Cigna Healthcare of Texas, Inc. v. VCare Health Servs., PLLC*, Civil Action No. 3:20-CV-0077-D, 2020 WL 3545160, at *5 (N.D. Tex. June 29, 2020) ("Cigna's conclusory allegations, which do not point to any particular language used in its plan documents, are insufficient to plausibly allege that

Cigna's plans, explicitly or by implicated, created an equitable lien over its alleged overpayments to Defendants.").

Even putting aside Aetna's inconsistent allegations and assuming that an overpayment provision did exist in all the plans at issue, that alone would not establish an equitable lien. "ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets." *Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 365 (5th Cir. 2014). Generic language in an overpayment provision "cannot be understood by a plan member—or a provider that is not a party to the plan—as asserting an equitable lien or constructive trust on plan overpayments to providers." *Advanced Surgery Ctr.*, 2015 WL 4394408, at *10. Aetna's vague allegations regarding overpayment provision language say nothing about a lien or a trust. Because Aetna has not stated an equitable claim for recovery of overpayments pursuant to ERISA § 502(a)(3)(b), Count VIII must be dismissed.

**E. Aetna's ERISA claims for declaratory and injunctive relief are duplicative, unripe, and improperly pleaded.**

In Count IX, Aetna recasts its other claims under the banner of declaratory relief. For instance, Aetna seeks broad declarations that "Defendants received overpayments from the ERISA plans," Compl. ¶ 225b or similarly that the claims billed by Tiero "are not covered by the ERISA Plans," Compl. ¶ 225a. In other words, "it merely couches the restitution claim in the form of a declaration that it may obtain said restitution," *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, Civil Action No. 13-cv-3422-WJM-CBS, 2015 WL 1041515, at *4 (D. Colo. Mar. 6, 2015). Such "re-framing does not change the nature of the relief sought, which falls

outside the scope of § 502(a) because," as outlined above, "the amounts requested are not specifically identifiable funds." *Id.*

Aetna's request for declaratory relief also fails because it is not ripe. "An action for declaratory relief lacks ripeness if it involves a request that the court declare the rights of parties upon a state of facts that has not yet arisen, or upon a matter which is future, contingent and uncertain." *Brewster v. Brennan*, 567 F. Supp. 2d 791, 796 n.4 (D. Md. 2008) (quoting *Boyds Civic Ass'n v. Montgomery Cnty. Council*, 309 Md. 683, 697 (1987)); *see also State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*, Civil Action No. 18-cv-1279, 2018 WL 6514797, at *4 (D. Md. Dec. 11, 2018). Here, Aetna seeks a declaration about claims that "*may* be submitted in the future . . . *if* billed as the Defendants have historically billed." Compl. ¶ 225c (emphasis added). It also seeks a declaration regarding claims that "remain pending," *i.e.*, claims that Aetna has not processed. The Court should refuse to entertain Aetna's request for an advisory opinion based on facts that have not yet (and may not ever) come to pass. Aetna's request is particularly troublesome given that it has not supplied the necessary factual information to support it. The claims data that it provided to undersigned counsel (but not the Court) *does not include* claims that remain pending; it only selectively includes claims that Aetna has already paid. Thus, as it did in its original Complaint, Aetna has again failed to supply the essential facts necessary for Defendants and the Court to evaluate its claims.

Aetna's request for injunctive relief is flawed, too. Aetna seeks to enjoin Defendants from transferring funds paid by Aetna. *See* Compl. ¶ 221a. That request is intimately tied to its restitution theory, which fails as outlined above. More fundamentally, Aetna's generic assertion that "[t]here is no other remedy available law to prevent the irreparable harm that will result as to Aetna," Compl. ¶ 222, is wrong since there *is* an adequate remedy at law: the payment of

monetary damages.[8] *See Hughes Network Sys., Inc. v. InterDigital Communications Corporation*, 17 F.3d 691, 694 (4th Cir. 1994) (finding that, absent "extraordinary circumstances," harms compensable through monetary damages are not irreparable). The Court should dismiss Aetna's claim for injunctive relief and its request for declaratory relief.

## II. Aetna cannot invoke the Declaratory Judgment Act to circumvent ERISA's limitations.

In Count X, Aetna seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. But courts have made clear that an entity cannot use the Declaratory Judgment Act to accomplish what ERISA disallows. As one appellate court put it, "[t]he express grant of federal jurisdiction in ERISA is limited to suits brough by certain parties as to whom Congress presumably determined the right to enter federal court was necessary to further the statute's purposes . . . [plaintiff's] declaratory judgment action simply is unnecessary to further the statute's purposes." *Gulf Life Ins. v. Arnold*, 809 F.2d 1520, 1523 (11th Cir. 1987); *see also Oxford Health Ins., Inc. v. Motherly Love Home Care Servs., Inc.*, 237 F. Supp. 3d 25, 35 (E.D.N.Y. 2017) ("As Oxford lacks standing to pursue its claims pursuant to ERISA, it may not invoke the DJA as an independent basis for this Court's jurisdiction") (citation omitted).

Even if Aetna could invoke the Declaratory Judgment Act, the declaratory judgment action fails for the reasons above, including that it is duplicative of other claims. For example, Aetna seeks a declaration that Defendants violated the Pennsylvania and Connecticut insurance fraud statutes, Compl. ¶ 197c, which is unnecessary given the separate counts under those statutes, *see id.* Counts V & VI. In other words, declaratory relief would not "assist in 'clarifying

---

[8] Aetna's claim that there is a "live and ongoing need for injunctive relief," Compl. ¶ 219, is contradicted by Aetna's allegation elsewhere that it has not received any claims from Defendants since July 13, 2023. *Id.* ¶ 116.

and settling the legal relations in issue,'" and instead "would force the court to handle the same issues twice." *Int'l Painters and Allied Trades Indus. Pension Fund v. Florida Glass of Tampa Bay, Inc.*, Civil No. SAG-23-00045, 2023 WL 3304891, at *5 (D. Md. May 8, 2023) (quoting *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)). Thus, the Court should exercise its discretion by declining to consider and dismissing Count X. *See id.*

## III. Aetna's state-law claims fail.

Aetna fails to properly plead its state-law claims. Central to each of them is the notion that Tiero fraudulently submitted claims for reimbursement. Aetna's Amended Complaint, however, falls far short of pleading that purported fraud, or conduct aiding and abetting the alleged fraud, with the specificity required by Rule 9(b). In addition to this overarching flaw that requires dismissal of multiple counts, Aetna fails to properly allege the elements of duty and reasonable reliance in its negligent misrepresentation count. And it seeks to apply Pennsylvania and Connecticut law to this action without an adequate basis for doing so.

### A. Aetna has not alleged fraud with particularity as required by Rule 9(b).

To recover damages for fraud under Maryland law, a plaintiff must prove the following elements by clear and convincing evidence:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S&R, Inc.*, 334 Md. 398, 415 (1994). Fraud claims must be pleaded with particularity, Fed. R. Civ. P. 9(b), meaning a plaintiff must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th

Cir. 1999). That is, a plaintiff must specifically allege the "who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 280–81 (4th Cir. 2014) (internal quotation marks and citation omitted).

In Count I, Aetna alleges that Defendants "engaged in a fraudulent scheme designed to extract inflated and improper reimbursement from Aetna and its plan sponsors." Compl. ¶ 1. Aetna's generalized allegations of fraud do not meet the basic notice pleading standard, let alone the heightened standard under Federal Rule of Civil Procedure 9(b).

*First,* Aetna's Complaint says nothing about "who," specifically, committed the alleged fraud. *Ahumada*, 756 F.3d at 281. It fails to "name the corporate individuals involved in the allegedly fraudulent conduct." *United States ex rel. Kelly-Creekbaum v. L'Academie De Cuisine*, Civil Action No. DKC-17-3525, 2019 WL 3817264, at *6 (D. Md. Aug. 2019) (citation omitted). Instead, Aetna improperly engages in "group pleading" that "Defendants" engaged in the supposedly fraudulent behavior. *See, e.g.*, Compl. ¶ 98 ("In addition to the misrepresentations the Defendants made to Aetna"); *see also id.* ¶¶¶ 121, 123, 124. By definition, group pleading is non-specific and thus fails to meet the Rule 9(b) standard.

While Aetna may wish to treat the Defendants as one, it has an obligation to adequately plead each element for each claim against each Defendant.[9] As the Fourth Circuit recently

---

[9] Aetna has indiscriminately asserted every single count against Tiero, Certify, and Dr. Zalzala. But based on even the bare allegations of Aetna's Amended Complaint, it is clear that *Tiero* is Aetna's target. Aetna acknowledges as much when it refers to "*Tiero's* fraud." *See* Compl. ¶ 139 (emphasis added). Aetna claims that Tiero operated a website (Compl. ¶ 77), conducted the marketing (*id.* ¶ 76), managed the billing (*id.* ¶ 80 ("billed by Tiero")), delivered the COVID-19 tests (*id.* ¶ 86), obtained an assignment of benefits from Aetna members (*id.* ¶ 207), and submitted allegedly fraudulent insurance claims, *see id.* ¶ 96 ("As set forth above, the claims never should have been billed to Aetna by Tiero"); *id.* ¶ 100 ("Because Tiero typically billed . . ."); *id.* ¶ 102 ("Tiero billed Aetna"); *see also id.* ¶ 112 (referring to "Tiero's service"); *id.* ¶ 166 ("Aetna and its plan sponsors overpaid Tiero's claims"). While the Court should dismiss Aetna's Amended

explained, a plaintiff "did not specify who it was accusing of which specific misrepresentations" when it "variously refer[ed] [] to the actions taken by the actuary, the Fund, [and] the Trustees without detailing who allegedly knew what or when." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 706 (4th Cir. 2018) (internal quotations omitted). Such tactics "make[] it difficult to follow the precise nature of the alleged fraud, and thus fall[] short of the applicable pleading standard." *Id.* at 706–07; *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.") (internal quotation marks and citations omitted).

*Second,* Aetna has not properly identified the specific claims at issue (the "what"). Aetna has not identified what supposed misrepresentations accompanied which specific insurance claims. For instance, Aetna alleges that Defendants engaged in fraud by submitting insurance claims where it did not actually provide the service to patients. *See* Compl. ¶ 121d (alleging misrepresentation "when no service or supply was provided"); *id.* ¶ 203e (alleging that Defendants "did not provide some of the tests to Aetna members"). However, Aetna has not identified a *single* insurance claim where Tiero did not provide a COVID-19 test to an Aetna member. Aetna similarly alleges that Tiero provided COVID-19 tests to Aetna members who did not want the tests. *See* Compl. ¶ 121e (claiming provisions of "OTC at-home COVID-19 tests

---

Complaint in its entirety for the reasons discussed throughout, it should, at minimum, dismiss the claims against Certify and Dr. Zalzala.

not ordered by patients"). Yet, again, Aetna has not identified even one example where this was allegedly the case. Aetna's general allegations are insufficient to meet the Rule 9(b) standard.

*Third*, as with the basic details of the alleged fraud, Aetna does not properly plead that any misrepresentation by Defendants was made for the purpose of defrauding Aetna. While "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), "a plaintiff still must set forth specific facts that support an inference of fraud," *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted). Further, "[i]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." *In re DDAVP Direct Purchase Antitrust Litig.*, 585 F.3d 677, 695 (2d. Cir. 2009) (citation omitted). Here, Aetna's Complaint includes nothing other than conclusory allegations regarding intent. *See, e.g.*, Compl. ¶ 124 ("Tiero, Certify, and [Dr.] Zalzala intended and expected that Aetna would rely on these representations in paying the claims they submitted to Aetna."); *id.* ¶¶ 171, 182 ("Upon information and belief, Defendants did so knowingly and with the intent to defraud.").[10]

*Fourth*, Aetna's Complaint is deficient because it does not include specific allegations regarding the "how," *i.e.*, how Tiero's submissions affected Aetna's reimbursement. Aetna does not describe how it processes insurance claims, or who processes them, other than by stating that "the process by which Aetna adjudicates claims is largely automated." Compl. ¶ 26. Aetna does not link the alleged misrepresentations with the resulting payment but baldly asserts that the

[10] Thirty times throughout its Amended Complaint, Aetna uses the phrase "upon information and belief" to mask its speculative allegations. As the Fourth Circuit has made clear, a complaint's conclusory allegations based solely "upon information and belief" are "insufficient to defeat a motion to dismiss." *Harman v. Unisys Corp.*, 356 F. App'x 638, 640–41 (4th Cir. 2009); *see also Kashdan v. George Mason Univ.*, 70 F.3d 694, 701–02 (4th Cir. 2023).

alleged "misrepresentations were material to Aetna's payment [of an unspecified amount for an unspecified number] of claims that the Defendants submitted or caused to be submitted to Aetna because they impacted whether, and to what extent, the Defendants' claims were paid by Aetna." Compl. ¶ 123.

In the same vein, Aetna's Complaint contains precious few details regarding its reliance on the supposed misrepresentations, and whether such reliance was reasonable. "Reasonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud … and such reliance must be pleaded with particularity." *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987). Here, the Complaint merely contains generic assertions of reliance. *See, e.g.*, Compl. ¶ 131 ("Aetna reasonably and justifiably relied on these misrepresentations in paying claims submitted by Tiero, Certify, and [Dr.] Zalzala."); *id.* ¶ 132 ("Aetna reasonably relied on the truthfulness of the information Tiero, Certify, and [Dr.] Zalzala included in the claims they submitted to Aetna or caused to be submitted to Aetna."). These allegations "fall[] well short of the particularity that is required for fraud claims" because a "simple allegation of reliance, with nothing further, gives defendant no notice of how plaintiff relied . . . much less if that reliance was reasonable." *Mizell v. Sara Lee Corp.*, Civil Action No. 2:05CV129, 2005 WL 1668056, at *6 (E.D. Va. June 2005) (internal quotation marks and citations omitted).

Because Aetna has not alleged the essential details of Defendants' supposed fraud—the who, what, when, where, and how—or the basis for its claim of reliance with the particularity required by Rule 9, the Court should dismiss Count I.

**B. Aetna has not adequately pleaded a duty of care or justifiable reliance to support its claim of negligent misrepresentation.**

In Count III, Aetna alleges a claim for negligent misrepresentation. To state a claim for negligent misrepresentation, a plaintiff must establish five elements:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Martens Chevrolet, Inc., v. Seney*, 439 A.2d 534, 539 (Md. 1982). Aetna's negligent misrepresentation claim should be dismissed because it fails to adequately allege both a duty of care and justifiable reliance.

To determine "whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Jacques v. First Nat. Bank of Md.*, 307 Md. 527, 534 (1986). Where, as here, "the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." *Id.* No such nexus exists here.

The relevant parties regarding the submission of claims (Tiero and Aetna) are sophisticated "commercial entities," who operate vis-à-vis one another in an "arm's-length" manner, and Aetna does not allege that there is any contractual language that purports to creates a duty of care between them. *See Chubb & Son v. C&C Complete Servs., LLC*, 919 F. Supp. 2d 666, 675 (D. Md. 2013); *see also OceanFirst Bank N.A. v. Brink's, Inc.*, Civ. No. DLB-21-3275, 2022 WL 4465897, at *4 (D. Md. Sept. 26, 2022) (citing *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 98 (4th Cir. 1992), for proposition, in case where court affirmed dismissal of negligence claim, that "[e]qually sophisticated parties . . . should be held

only to those duties specified by the agreed-upon contractual terms and to general tort duties imposed by state law")). But even if there were such language a "contractual obligation, by itself, does not create a tort duty. Instead, the duty . . . must have some independent basis." *OceanFirst Bank*, 2022 WL 4465897, at *3 (internal quotation marks and citations omitted). Thus, even if Tiero "stand[s] in contractual privity" with Aetna, "the alleged nexus is insufficiently intimate to warrant the imposition of a tort duty." *Chubb*, 919 F. Supp. 2d at 675.

Second, Aetna has not properly pleaded that it justifiably relied on any representations by Defendants. As already discussed, Aetna's conclusory allegations of reliance, *see, e.g.*, Compl. ¶¶ 131–32, fail to meet even the Rule 8 standard, *see Twombly*, 550 U.S. at 555. The Court should, therefore, dismiss Count III.

**C. Aetna improperly alleges claims under Pennsylvania and Connecticut law.**

In Counts V and VI, Aetna asks this Court to apply Pennsylvania insurance fraud law and also Connecticut insurance fraud law, when neither applies to this action.[11] Aetna asks this Court to apply Pennsylvania's Insurance Fraud statute, 18 Pa. C.S.A. § 4117, to an unspecified set of claims, and Connecticut's Insurance Fraud statute, C.G.S.A. § 53-442–44, to another set of unspecified claims. Aetna, however, cannot simply handpick which state laws it wishes to apply; if that were the case, then a plaintiff could just select the state law that contains more favorable provisions, as Aetna appears to do here. *See* 18 Pa. C.S.A. § 4117(g) (providing for treble damages and reasonable investigation expenses, costs of suit, and attorneys' fees). Neither statute applies beyond the borders of its state. As the Supreme Court of Connecticut has long recognized, "[u]nless the intention to have a statute operate beyond the limits of a [s]tate is

[11] Even if Pennsylvania and Connecticut law applied, for the same reasons that Aetna's general fraud claim fails, *see* Argument II.A., so, too, do its claims under these statutes.

clearly expressed or reasonably to be inferred from the language . . . or from its purpose, subject-matter, or history, the presumption is that the statute is intended to have no extraterritorial effect." *Abel v. Plan. & Zoning Com'n of Town of New Canaan*, 297 Conn. 414, 422 (2010) (quoting *Kennerson v. Thames Towboard Co.*, 89 Conn. 367, 374 (1915)).

Aetna has not pleaded a sufficient factual basis for applying Pennsylvania or Connecticut law. The words "Pennsylvania" and "Connecticut" scarcely appear in the Complaint. *See, e.g.*, Compl. ¶¶ 5, 6, 177, 188. The Complaint does not detail Defendants' connections to those states, if any exist at all. Aetna does not claim that *any* of the individuals who received COVID-19 tests from Tiero were based in those states. Nor does it allege where Aetna received and processed the insurance claims submitted by Tiero.

Although Aetna has not supplied Defendants or the Court with the necessary factual information to conduct a proper choice-of-law analysis, based on the limited information available, Maryland law applies. The Amended Complaint asserts that "Aetna has been damaged in Pennsylvania" Compl. ¶ 177, and "damaged in Connecticut," *id.* ¶ 188. Aetna provides no supporting details for these conclusory allegations. Nor does it specify whether both Plaintiffs were supposedly harmed in both States, or whether the Pennsylvania-based entity (Aetna Health, Inc.) and the Connecticut-based entity (Aetna Life Insurance Co.) were harmed in their respective States. Notwithstanding this lack of detail, it is apparent that neither Pennsylvania nor Connecticut law applies. *Even if* Plaintiffs had adequately alleged that they were damaged in Pennsylvania and/or Connecticut, the law of the jurisdiction where the alleged wrongful conduct took place (*i.e.*, Maryland) should govern. *See Carroll v. Walden Univ., LLC*, Civil No.: 1:22-cv-00051-JRR, 2022 WL 17252556, at *16 (D. Md. Nov. 28, 2022) (reflecting court's finding "that in this case where the alleged wrongful conduct occurred in a different jurisdiction than where

the loss was felt, the place of the injury is where the wrong occurred [] not where the loss was felt[]”). The Court should dismiss Counts IV and V with prejudice.

**D. Aetna’s remaining state law claims are not properly alleged.**

Aetna’s additional claims for aiding and abetting (Count II), civil conspiracy (Count IV), unjust enrichment (XI), and money had and received (Count XII) fail because they do not adequately allege an underlying tort, are duplicative of other counts, and/or lack a sufficient factual basis. While these state law claims are not nominally fraud claims, they are grounded in the alleged fraud, and therefore Aetna is required to plead those claims with the same level of particularity as its fraud claim. *See Carefree Land Chiropractic*, 2018 WL 6514797, at *4 (applying heightened pleading standard to unjust enrichment claim where claim premised on “allegation that [defendant] unlawfully obtained the insurance payments through the scheme alleged in its fraud claim”).

**1. Aetna has not properly stated a claim for aiding and abetting fraud.**

In Count II of its Amended Complaint, Aetna asserts a claim for “Aiding and Abetting Fraud.” The elements of aiding and abetting are “(1) independent tortious conduct by the direct perpetrator of the underlying tort; (2) substantial assistance, aid, or encouragement to the principal tortfeasor; and (3) actual knowledge of the aider and abettor of the wrongful conduct and his role in furthering such conduct.” *Acqua Assistance, LLC v. Pelican Grp. Consulting*, Case No. 1:20-cv-02802-JRR, 2022 WL 2275465, at *17 (D. Md. June 23, 2022) (citing *Alleco, Inc. v. Harry & Jeanette Weinberg Found.*, 340 Md. 176, 186 (1995)). A claim for aiding and abetting fraud is subject to the requirements of Rule 9(b). *See id.*

As an initial matter, Aetna’s allegations are imprecise and difficult to follow. Aetna asserts the claim “against each of the Defendants in the alternative to Count I [for fraud],” which it also alleges against each of the Defendants. Compl. ¶ 135. However, an “aiding and abetting

fraud" claim is an *adjunct* to a fraud claim; it is not an alternative to the underlying claim. Moreover, Aetna's allegations again rely on impermissible "group pleading." Aetna alleges that "Tiero, Certify, and [Dr.] Zalzala were at all times aware of each of their respective roles in the illegal and fraudulent schemes" and "knowingly and substantially assisted, encouraged, incited, aided, and abetted the fraudulent conduct." *id.* ¶ 138. In other words, Aetna seeks to lay collective blame on the three Defendants for *both* the underlying fraud and for the aiding and abetting of that fraud, contrary to the elements of the claim, which distinguishes between the "direct perpetrator" of the underlying fraud and the aider and abettor.

Other portions of Aetna's Amended Complaint suggest that it intends to bring the claim only against Certify and Dr. Zalzala. *See* Compl. ¶ 139 (stating that "Certify and [Dr.] Zalzala aid[ed][] and abett[ed] *Tiero's fraud*" (emphasis added)). If the Amended Complaint is construed in that manner, then the count should be dismissed against Tiero, as Tiero cannot be found to aid and abet its own fraud.

Assuming that is Aetna's theory, the claim also fails against Certify and Dr. Zalzala because Aetna has not properly alleged that Tiero (or any Defendant) engaged in the underlying fraud, thus, there was no conduct for the others to aid and abet. *See Alleco*, 340 Md. at 201.

The Amended Complaint is also completely silent as to the third element, which is another ground for dismissal. Aetna has not alleged that Certify or Dr. Zalzala had "actual knowledge" of the "wrongful conduct" and their "role in furthering such conduct." *Acqua*, 2022 WL 2275465, at *17. Aetna's conclusory allegations that Defendants "knowingly and

substantially" aided the alleged fraud, *see e.g.*, Compl. ¶ 138, are woefully inadequate to meet the particularity requirements of Rule 9(b). The Court should therefore dismiss Count II.[12]

**2. Because Aetna does not plausibly plead an underlying tort or an agreement to defraud, the civil conspiracy claim must be dismissed.**

Civil conspiracy is a derivative tort. *See Alexander & Alexander, Inc. v. B. Dixon Evander & Assoc.*, 336 Md. 635, 645 n.8 (1994). Aetna bases its conspiracy claim on Defendants' alleged fraud and, as with its aiding and abetting claim, relies on improper group pleading. *See* Compl. ¶ 157 (alleging that "Tiero, Certify, and Dr. Zalzala conspired and agreed to engage in the fraudulent acts set forth above"). Because the fraud claim fails for the reasons outlined above, Aetna's civil conspiracy claim in Count IV fails as well.

Even if Aetna had adequately pleaded an independent tort, it has not plausibly alleged a conspiracy. An agreement is the heart of a conspiracy and, here, Aetna has not provided any "information about the agreement itself, including its time or place, or what Defendants specifically did to carry the conspiracy into effect." *Gallman v. Sovereign Equity Grp., Inc.*, Civil Action No. AW-11-2750, 2012 WL 1820556, at *6 (D. Md. May 15, 2012) (dismissing conspiracy count for failing to meet Rule 9(b)'s particularity requirement). Nowhere does the

[12] For good measure, Aetna's allegations also fail as to the second element. Aetna has not adequately pleaded that the aiding-and-abetting Defendants provided "*substantial* assistance, aid, or encouragement" to the supposed fraud. Aetna, however, has not included non-conclusory allegations that Certify and Dr. Zalzala had *any involvement*, let alone substantial involvement, in the submission process. There is no allegation that Dr. Zalzala ever reviewed a claim, consulted with Tiero on the preparation of the claims, or communicated with Aetna regarding any claims. While Aetna alleges that he "agreed with Tiero and Certify" to "use his name and National Provider Identifier" on the "at-issue claims," Compl. ¶ 72, the Amended Complaint does not include the "who, what, when, where, or how" of this supposed agreement, as required by Rule 9(b). Likewise, the Amended Complaint does not plausibly allege that Certify played any role in the preparation and submission of claims. Even a cursory review of the Business Associate Agreement that Aetna cites, *see id.* ¶¶ 62, 64 & n.15, shows that it has nothing to do with the submission of claims. Similarly, seeking payment or depositing funds received from Tiero on the back end does not give rise to an inference that Certify was involved in the alleged fraud on the front end.

Amended Complaint point to "any actual agreement at a particular time" between Defendants. 791 F. Supp. 2d 156, 162 (D.D.C. 2011). Because Aetna has not plausibly alleged "the existence of any events, conversations, or documents indicating there was an agreement between the defendants to" defraud Aetna, *White v. United States*, 791 F. Supp. 2d 156, 162 (D.D.C. 2011) (internal quotations marks and citation omitted), its civil conspiracy claim fails.

**3. Aetna's claims for unjust enrichment and money had and received are duplicative of other flawed claims and of each other.**

Aetna's unjust enrichment claim (Count XI) and its claim for money had and received (Count XII) are further iterations of Aetna's claim for fraud. *See* Compl. ¶ 203 (listing alleged misrepresentations that form basis of fraud claim); *id.* ¶ 210 (referring to alleged misrepresentations that form basis of fraud claim). Because they rise and fall with the underlying fraud claim, they must be dismissed.

The two claims are also duplicative of one another. *See Jennings v. Rapid Response Delivery, Inc.*, Civil No. WDQ-11-0092, 2011 WL 2470483, at *6 (D. Md. June 16, 2011) ("Money had and received is analogous to an unjust enrichment claim or restitution claim. The claims lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not . . . be allowed to retain.") (internal quotation marks and citations omitted). Because Aetna does not need two of the same claim, the Court should, at minimum, dismiss one of the duplicative counts. *See Burley v. Balt. Police Dep't*, 422 F. Supp. 3d 986, 1030 (D. Md. 2019) (explaining that "claims are duplicative, and there can be only one recovery" and "[i]t is not helpful to clog and clutter" complaints "with repetitive allegations").

**Conclusion**

For the foregoing reasons, Tiero, Certify, and Dr. Zalzala respectfully request that Plaintiffs' Amended Complaint be dismissed.

Respectfully submitted,

/s/

Andrew D. Freeman (Fed. Bar No. 03867)
Kevin D. Docherty (Fed. Bar No. 18596)
Neel K. Lalchandani (Fed. Bar. No. 20291)
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 2500
Baltimore, MD 21202
T: (410) 962-1030
F: (410) 385-0869
adf@browngold.com
kdocherty@browngold.com
nkl@browngold.com

*Attorneys for Tiero, LLC, Certify Global Inc., and Dr. Zalzala*